Case number 22-1308 Johannes Lamprecht and Linda Lamprecht Appellants v. Cmsnr of Internal Revenue. Mr. DeVos for the appellants, Mr. Brownman for the appellee. Good morning Mr. DeVos. Certainly. May it please the court. Good morning. My name is Lloyd DeVos and I'm counsel to the appellants Johannes and Linda Lamprecht and I previously requested two minutes set aside for rebuttal. I'd like to direct the court to the fifth argument in our brief that the final resolution of the UBS John Doe summits took place on August 19, 2009 when the United States and Switzerland agreed. Can you move the lectern up a little bit because the microphone is not catching everything. Up, up, up. That went down. I'm sorry your honor. I'll start again. I'd like to direct the attention to the court to the fifth argument in our brief that the final resolution of the UBS John Doe summits took place on August 19, 2009 when the United States and Switzerland agreed in paragraph three of the agreement between that the UBS John Doe summons would not be enforced. August 19, 2009 is the date when the UBS John Doe summons was resolved and not at a later point in time when the commissioner for reasons known only to himself sent a letter to that effect. Even with the extensions of time as provided by law, the limitations period for the commissioner issued notices of deficiency had expired prior to deficiency notices being issued to the Lampras. Even if you agree with the commissioner, which you should not do, that he met his burden of production under sections 7491c and 6751b by having an immediate supervisor approve in writing the accuracy penalty that we're discussing here under the applicable legal standard. And even if you agree with the commissioner, which you should not do, that the Lampras did not file qualified amended tax returns after the commissioner issued the John Doe summons, notwithstanding the fact that they made no claim on their original return with respect to the activity described in the UBS John Doe summons as is required in the treasury regulation. And even if you agree with the commission, which you should not do, that the UBS John Doe summons was a valid and enforceable summons, notwithstanding that the only evidence produced below proved that the UBS John Doe summons was not issued for the purpose of obtaining documents and information under section 7602, but was issued for the prohibited purpose of extending the statute of limitations and as an illegal summons and not be relied upon to extend the limitation period during which the commissioner could claim a deficiency from the Lampras. Even if you agree with the commission on all these things based on the agreement between the United States and Switzerland as two sovereign nations, the time for the commissioner to issue a deficiency notice in respect of 2006 expired on November 11, 2013. Why should we accept that date rather than the date that the subpoena was complied with? Because at the time the United States and Switzerland entered into the agreement that they did, they agreed that the UBS John Doe summons shall not be enforced by the United States, not will not be enforced, shall not be enforced. That's an agreement between two countries pursuant to the mutual agreement provisions of the agreement of the tax treaty between the United States and Switzerland. As such, it has binding force and the United States agreed it was not going to enforce 7602 or attempt to enforce under 7602 its right to obtain documents using the subpoena power. The United States agreed that with Switzerland and therefore it's not a question of what it's complied with. The United States agreed that it is not going to attempt to obtain compliance and at that point we're done. The subpoena has been resolved using the language of... How is that consistent with the statute? The statute says when it is final, when it's finally resolved, when the commissioner has determined that the subpoena has been finally resolved. That's what the regulations say, finally resolved. The agreement by the commissioner that the UBS John Doe summons was not going to be enforced resolved the subpoena, resolved the summons. The summons at that point in time was not going to be ordered to be enforced by a federal court and as we've said in our brief... What if someone issues a subpoena to another party for documents and they reach an agreement like this that says we're not going to enforce but they say we're not going to enforce the subpoena through contempt or otherwise. But if you don't give us the documents within 30 days you agree to pay us essentially liquidated damages of a million dollars. Has the subpoena been resolved? Has it been complied with if that's the agreement? No, I would say in that circumstance between private parties, no your honor. But here we're talking about an agreement between two sovereign nations having force of law under the mutual agreement provision of a tax treaty and as such it does resolve the subpoena because we're talking here about an agreement that the subpoena has been resolved. There's no condition that I'll pay you a million dollars later. There's a condition that you're going to get documents right? No, that was part of the UBS agreement with the United States. The agreement between the Swiss government and the United States was that the subpoena will not be enforced because the parties had different interests and that's why they were two separate agreements. Well who was the subpoena issued to? Subpoena was issued to UBS. The government of Switzerland intervened because its interests as a sovereign were being affected. What was happening is that the United States through the issuance of the subpoena was asking UBS to violate Swiss law and the Swiss government had issued a blocking order prohibiting UBS from turning over any documents to the United States or to the IRS regardless of the order of the district court. And the way that it got resolved was that the United States would not enforce the agreement against Switzerland but that UBS would over documents and that's what happened. No your honor, the way it got resolved was that the United States made a request for documents under the tax treaty between the United States and Switzerland. The Switzerland received the document information request and Switzerland using its domestic law and internal law requested the documents from UBS. UBS turned the documents over to the Swiss federal tax administration and the Swiss federal tax administration then turned the documents over to the United States pursuant to the terms of the tax treaty. There was no direct disclosure of documents from UBS to the United States. That did not take place. And that's also important in the context of the extension of the statute of limitations because if the United States is receiving documents under a valid IRS summons the statute of limitations may be extended. That is not the case in the case of the document. Was there a formal request by the Internal Revenue Service for documents pursuant to the tax treaty? Yes there was your honor. And is that in the record? No it is not your honor. It was not relevant. If the request simply said please turn over the documents that are covered by our John Doe summons. I'm sorry your honor I don't understand the question. If the document request simply repeated the John Doe summons then your argument seems to me to evaporate. Your honor the document request that was made by the United States to Switzerland was a different document request that did not reflect the document request under the John Doe summons. What were the documents that the United States was asking Switzerland to turn over or UBS to turn over? How did they differ from what the John Doe summons saw? The reason your honor is because and it's parts of this or that you'll be in the record in the form of the excerpts from the Swiss government official report. The difference is that the Swiss government objected to a blanket summons as not being authorized under the tax treaty. The summons was tailored pursuant to agreement between the United States and the Swiss government who only require certain categories of from people who had bank accounts of greater than a certain size which meant the indications of fraud or the like under the terms of the United States was tax treaty. And again none of this was narrow and it was still part I mean that that sounds to me like that was part of the John Doe summons. Well your honor it's part of the documents requested on the current summons but as a matter of law it is not the John Doe summons it is a tax treaty request and that is a different legal they can compromise and agree on narrowing and and when the documents do come in pursuant to the compromise then the John Doe summons has been satisfied and that's the I think that's the internal revenue services take that resolved means satisfied. I understand your point your honor but I respectfully disagree. United the government of Switzerland made it very clear in their submissions and as you can see in the Swiss government official that the Swiss government objected to the infringement upon their sovereignty of the issuance of the UBI John Doe summons by the United States. Then they issued a governmental blocking order prohibiting compliance. The Switzerland said that the only way that they were going to permit the documents to be given was pursuant to a request under the tax treaty which did not violate their sovereignty and which which they had agreed to provide documents under. But again that's a different type of a document production than production under a summons. The internal revenue codes specifically says that there's an extension of time for the statute of limitations in the case of summons it does not say and it specifically does not say that there is an extension of time in the case of a document request under the provisions of a tax treaty request and that's how we understand the tax law to be. There's never been a it's become almost a matter of faith among the tax bar but there are no additional decisions on it one way or the other. I understand thanks. Do you agree with this statement the settlement agreement between the parties to the enforcement suit specified the dismissal of the suit would in and of itself. I'm sorry I'm not hearing you I apologize. The settlement agreement between the parties to the enforcement suit specified the dismissal of the suit would in and of itself have no effect on the John Doe summons. I agree with your honor as we said in our papers it had no effect whatsoever there was no determination whether the John Doe summons was effective or was not effective. The parties agreed to put that off for a later day and as it turned out there was never an issue that came up. Let me I'd like to turn to the first argument in your brief which is where I thought you were going to begin your your oral argument and I think there's some strength to the merits of it that 6662 lists about 10 different penalties about 10 different accuracy related penalties and the supervisor here when when he gave his approval to assess a penalty didn't specify which of those 10 accuracy related penalties he was approving but the district court sorry the tax court did not address that argument one way or the other were you surprised that the tax court didn't address that yes your honor I was surprised for a couple of reasons one because the assumption in your question is that the supervisor approved the penalty whereas we pointed out in our brief the signature of the supervisor happened before and I want to I want to not get too distracted by the other arguments okay in this particular argument because the tax court in the three separate cases that said you have to specify the penalty and the leading case on which the other tax court judges reside where the was the decision of Judge Gustafson and if you were surprised the tax court didn't address this this point why didn't you move for reconsideration on that we didn't move for reconsideration on this point because frankly after reading the opinion we didn't think we would get anywhere well I I think maybe that was a reason but maybe another reason is that you hadn't made this argument before the tax court so it actually shouldn't have been very surprising that the tax court didn't address it no your honor as we put into our brief we did specify this in our last reply brief that was filed with the tax court and in the brief where we actually raised the argument to the tax court so even if uh raising in a new argument in a reply brief on a summary judgment motion is enough to put an argument before a court uh your your argument and I've got it here in front of me it's very skeletal uh it says Mr. David and Mr. Anderson say what they say they approved the initial determination without knowing what the penalty was the authority for the penalty or how much the penalty was for the declarations are not evidence of a written initial determination to impose a penalty that doesn't sound very much like the argument I summarized and it doesn't sound very much like the argument that you make in your blue brief here your honor I think that all I can say to that is the way that this case developed on the motion for summary judgment was that we received copies of the documentation on which the government relied as part of their motion for summary judgment they were not produced previously in discovery we received the explanation of those documents in the government's reply brief right when we no yeah in support of the government's summary judgment motion did that come before after you filed your reply brief in your summary judgment that came before we filed our why couldn't you make the full argument in the reply brief to your summary judgment motion uh the answer your honor is because we were limited by space in terms of what we were what we were doing there's no other reason for it and I can't give you one okay and I do think that goes back to the reconsider you do and I'm not an expert in tax court procedure but you can file a motion for reconsideration to a tax court decision correct you could of course okay under the rules all right no other questions um we'll give you some time thank you very much um mr brandman please accord robert brandman for the commissioner of internal revenue at bottom this case is a very simple road at a superficial level this case is very simple yeah the lamprex filed a tax return and then a few years later after uh on which they did not report their swiss bank income a few years later after a widely publicized u.s government crackdown on swiss bank secrecy what widely publicized at least amongst tax attorneys and swiss bankers they filed amended returns it's perfectly obvious from compare if the amended returns are correct perfectly obvious that they understated their income by more than 5 000 more than 10 percent the the ubs some the john does summons was widely publicized um it's i am saying it was it was widely publicized at least the government cracked down widely publicized before before they before the taxpayers filed their amended returns i i think it was but it's it's not essential that they have known about it uh the right yeah the way i read the regulation what matters is the date of service yes that's right um i'm just given given some background just to make it more of a negative sorry uh in any event the the amended return is correct the original returns plainly understated income and they're liable for this penalty and beyond that we have a sort of a buckshot approach to you know many many different theories for why the assessment might not be correct and rather than uh march the court through you know my reputation of each of them i did you know 60 pages of brief i'm really only interested in whether the court finds any of uh mr gloss's arguments well you know i raised the get my numbers right the 6751 argument yes uh and you know i i asked some questions of may well have been forfeited here but you you know you you represent the government and he will have more cases and some point an attorney is going to not this argument so when as an approval of supervisors approval of an inspector's proposal for an accuracy related just says i approve accuracy related penalty i.e i approved 66 62 penalty how is that approval of the relevant penalty when it could be any of 10 66 62 penalties it's not that specific correct this has been a developing area of the law 10 years so i think it's developing slowly it's been developing so it there was no development for a long time after the statute was first enacted and i think in 1998 and uh development started to pick up around 2015 or so tax court started taking that provision seriously if i am correct uh there is current the treasury is currently writing some regulations that will you know bring some certainty to this area but to this point there is it's only been a common law series of tax court decisions you know looking at this issue tangentially and and none of them really support the point that the uh the approval has to specify the subsection of 66 62 i don't think that the strongest argument is that it has to name the subsection i just think the argument is it has to it has to make clear which of the subsection penalties it's approving it in other words if one subsection were called the inheritance tax penalty then and that was subsection h you know i'm not saying that it would have to say i approve a subsection h penalty assessment it could say i improve inheritance tax accuracy related penalty assessment right currently the i mean the overall section is just called accuracy related penalty there are i think 10 different provisions that allow for 20 penalty and uh they're not stackable so they can't be the penalty can't be more than 20 even if you have multiple some of them uh hold a larger penalty 40 or 50 i think it would be uh there'd be a distinction there perhaps if the approval is for the 40 penalty it should specify that it's it's that level of penalty or the subsection that imposes the penalty of that level but among the uh you know 10 or so that only impose the 20 penalty at least among the two or three that are most common it's well so far no court has held that it was necessary to pin it and there's and there's no uh there's there's not a handle i think it's 6751 that that indicates that it should be well i mean the number right again 6751 talks about such assessment so it seems like it's referring to a particular assessment and it could be that you look at returns and it's possible you could do an assessment for a negligence accuracy related penalty or an underreporting accuracy related penalty and if the supervisor just approves you know uh you know choose your own adventure inspector pick whichever accuracy related penalty that's at the 20 level you want then it's not really the supervisor approving such assessment it's more like the supervisor giving the inspector something close to a blank check to i approve now and you decide what i'm approving later in this case at least i think the uh the approval for a substantial understatement penalty should be the easiest one should always be included in this case you could look at the two returns and it's perfect you don't have to turn past the front page of either of them but in this case there was later a negligence accuracy related assessment yes there was so that was that was possible under reporting was possible there was there was a there was a later approval of the negligence penalty after the examination i guess maybe did some additional work but you know just simply on opening up the thing you know a examiner can look at the front page of two returns and know like that that's a substantial understatement penalty but i don't know if i i understood are you saying there were two approvals yes there was a later approval for negligence penalty for the work for the exact amount of the assessment um the approvals don't specify the amount it was what well the negligence penalty is oh say is the same 20 as the substantial understatement okay there is a later approval uh you think uh submitted by a different revenue agent or negligence and they were approved they were communicated to taxpayer at a later date there's been a great deal of uh discussion in the press about the irs backdating these approvals uh is that an issue here there's not an issue about backdating of the negligence penalty or the approval of the substantial understatement penalty there's been argument in this case about what time of day the revenue agent signed off signed off on the initial determination versus when the supervisor signed off my opponent my my friend has argued that the supervisors approved before the revenue agent signed tax court said the revenue agent doesn't have to sign at all so it doesn't matter um but uh as to the specific issue about what time of day the approval came through um i put those approvals under a virtual microscope i mentioned it's not a is this a form that the uh that the supervisors sign or does does the individual revenue agent prepare this whatever this form and and give it to the uh supervisor this was a form the revenue agent prepared in order to get permission to open up the 2006 and seven years revenue agent was already auditing examining 2010 and he requested the earlier returns in order to complete his 2010 examination and he saw that 2006 and seven were could be penalized so he requested permission to open those returns up in order to assess an accuracy related penalty the supervisor signed off and according to the cost the um the revenue agent signed later in the but i expanded those forms on my computer to 300 and i couldn't see the time of day that the revenue officer signed up but the best answer is the tax court's answer it doesn't matter whether the revenue agent signed the call do you want to respond at all to the argument number five that your friend on the other side um made that the date that the summons the agreement was reached between switzerland and the united states the summons would not be enforced should be the controlling date um i think i heard some new new material today uh this phrase that the he's agreed the summons would not be enforced i don't think i saw that in the briefing before but of course the the case below was not about enforcing the summons or about a for a document request made by treaty that's just part of the background back the important part is that the irs issued a summons and the statute is extended based on the final resolution of the summons is either if it's been enforced one set of dates it hasn't been enforced when the summons is finally resolved regulation gives uh gives that data as you know when all the material has been turned over and it even gives the to review the material that's been given given its complexity and volume to determine that the summons applied with and there there was agreement all around between switzerland and the irs as to when uh material was was turned over in november 15th next year all right there are no other questions um we'll your argument submitted thank you for your time and um mr devos will give you two minutes for rebuttal thank you very much your honor let me speak first to judge randolph's question the irs has a form of form 300 there is a copy of it in the record it's referenced in our briefs the irs form 300 is a civil penalty approval whenever an irs agent wishes to propose a penalty against the taxpayer the internal revenue manual which of course is not legally binding says that the irs agents would fill out the form submitted to a supervisor the supervisor signs off on the form the penalty is approved and then it's communicated all of these 6751b not only this one but all of them that are making their way through the courts all involve the situation where the irs agents did not fill out the form 300 in other words they took some other approach to trying to get a supervisory approval or they did not get supervisory approval at all that's the evil that 6751b was aimed at and that's why we see a lot of cases coming through the tax court and coming into the courts of appeal now on this is there are there any other cases i'm not clear about this are there any other cases in the federal courts not the tax court that deal with this particular form as a method of satisfying supervisory approval no how about in the tax court besides uh not that i'm aware of in the tax court here no um the only other point that i'd like to make to the court is that normally taxpayers have great difficulty improving the institutional intention of the irs and you can't make a claim that the irs behaved wrongly this case is very unusual in that because of the affidavit of mr dr zulov and the official swiss government report we actually have evidence of the institutional intention of the irs the irs said to their swiss counterparts we're issuing the ir the ubs john doe summons in order to extend the statute of limitations a few days after that the irs went into district court and filed declarations saying we want information and documents both can't be correct at the same time do we know whether uh all right what material if any accompanied the form when it went to the supervisor for approval we have no information in other cases the irs has submitted an affidavit of the agent who submitted the form for example that's referenced in our brief where the agent submitted a an affidavit saying what information was submitted and what he was relying upon in order to get and what the process was to get the supervisor's approval in this case the agent is still in the employee of the internal revenue service there was no affidavit submitted we don't know whether any information other than the form was but before the supervisor we don't know we don't know that's within the purview of the irs that we were never able to obtain that information i meant to ask you i meant to ask you one question about qualified returns issue before your for now so but i'm the original tax returns asked if you had any foreign bank accounts and your clients checked no then later for the corrected returns they checked yes so that's correct so my question is about the original returns when they checked no wasn't that an affirmative misstatement that was an affirmative misstatement if you assume that it was affirmatively done and we could get into that but there have been cases before the what do you mean it was it what you said it was an affirmative misstatement if we assume it was affirmatively done i'm sorry your honor i'm trying to clarify the software that accountants use to prepare these forms default to a no answer there have been cases in the district courts and i don't think there have been any of the courts of appeal in connection with foreign bank account report forms where the taxpayer has said i didn't affirmatively intend to check that box the never arose in this case and the precedent say when that happens we don't we don't blame the taxpayer uh the district courts have held that this is a question of fact usually in the context of whether the taxpayer willfully intended uh not to have the box say no or not uh there was no finding on this issue there was no fact finding on this issue that took place before the uh before the tax court but yes the i agree with you the original tax return that was filed uh did indeed say that there were no foreign bank accounts and the amended tax return did indeed disclose all of the swiss bank accounts all right thank you we'll thank you very much
judges: Wilkins, Walker, Randolph